Pennington, J.
— The first defect in the order of removal complained of, is — that the order was directed to the overseers of the poor of the township from whence the pauper was to be removed, instead of a constable. It has been decided in a case reported in Carthew, 449, that at common law, independent of the statute authorizing amendments of defect in form, that this error was not fatal, in case the pauper was removed under the order. We are in this case, to presume, that the pauper was removed. If, however, there should be any doubt of the propriety of this decision, yet I apprehend that the 27th section of the poor act, authorized [228] the sessions to amend it. This being a defect apparent on the record, and no way affecting the jurisdiction of the justices, nor the merits of the case, must be considered a defect in form and not in substance. Lord Charles J. Lee, in an opinion delivered by him, as reported in Burrow’s Settlement Cases, 1(15, strongly inti *296 mates an opinion, that if it should be adjudged that a pauper was legally settled in one place, and he should be ordered to be removed to another, as this would be a defect apparent on the face of the record, it would be amendable by the statute. This appears to me a much stronger case than the present.
The second complaint against the proceeding below is,— that testimony was overruled, which went to show that the justices making the order of removal, resided in the township from whence the pauper was removed — and had been rated to the poor tax, and actually paid poor tax there. I supposed that this point [*] was settled in the case of Hopewell v. Kingwood,[1] in this court; but as it is again raised, doubts are probably entertained of its correctness — and for this cause, calls for further consideration.
It is true, that it is repugnant to the great principles of our law, that a man should be a judge in his own cause; and it is unquestionably true, that the authority exercised by the removing justices is judicial; and that if they reside in the town from whence the pauper is removed, and are rated and pay poor tax there, they must have an interest in the cause. In cases of this very minute interest, the law has from time to time, from the necessity and convenience of the thing, been relaxed. Our act of Assembly, Pat. 33, expressly authorizes two justices of the peace of the city, or town corporate from whence the pauper is to be removed, to make the order of removal — and the same act restrains them from sitting in sessions to hear appeals. I should have thought this case clear of all doubt or difficulty, had I not looked into the English statutes and adjudicated cases on the same subject. The British statute authorizes the justice of the division from whence the pauper is to be removed, to make the order; and it was adjudged in the case of Eex v. Great *297 "Chart,[1] that the justices residing in the parish from whence the pauper was removed, and contri butary to the maintenance of the poor of the parish, were incompetent to make the order, on the general principle of law that no man shall be permitted to be a judge in his own cause. Whether the word division in the English statute is not more extensive than that of parish, and therefore that disinterested justices may be found in the division, [229] I am not informed. If that should be the case, a distinction may be drawn between the British statute, and our act of Assembly. But [*] Lord C. J. Lee, who gave the opinion of the court, did not put it on that ground; but said, that the statute means only legal justices. I find, however, that doubts were ■entertained of the correctness of this decision; for in the same year, 16 Geo. 2, an act of Parliament was passed, empowering justices of the peace to act in their own parishes, and to do therein all acts respecting the relief, maintenance, and settlement, of poor persons, which shall appertain to the office of justice of the peace, &c. In the preamble to this act, are these words: — “ Whereas, doubts have arisen whether according to the laws and statutes now in force, his majesty’s justices of the peace may lawfully act, in any case relating to the parishes or places, to the rates and taxes of which such justices respectively are rated or chargeable, &c.” This act was, therefore, made to dear up doubts, not to ■originate a new law — it being lawful in England, for justices to act in this respect, in their own parishes, at least ever since the 16 Geo. 2. And our act passing during the colonial government, a long time after the act last mentioned, to wit, in 1774, and this act in direct terms, authorizing justices of the peace of the city or town corporate, from whence the pauper is to be removed, to make the removing order, and the same act being explained by a subsequent *298 section, restraining the same justices from sitting in. the-sessions in cases of appeal, I cannot possibly entertain a doubt on the subject; and am of opinion, that the question ought to be at rest.
The third ground of complaint is, that as the act of' Assembly requires the justices making the order of removal,, before they make the order, to convene the pauper before, them; and after adjudging the complaint to be true, to order and direct the pauper by a certain day, to remove to his-former settlement; and on his neglect or refusal to comply with such direction by the day prefixed, then to make the order. It is contended, that this proceeding ought to appear on the record, in order to show the jurisdiction of the justices; [*] and this not appearing in the case under consideration, it is alleged as error. It is certainly essentially requisite that this proceeding should be had; and it is also-proper, that there should be a record of it; and I incline to think, it would be regular and convenient to put it into the-order; not that any advantage is to arise from it to the town to which the pauper is sent, but that the regularity of the proceedings of the [230] justices may appear on the-face of the order appealed from; and thereby save the necessity of any other record of their proceedings. They have the same law in the State of New York, and all the-precedents of removals that I have been able to find, either in that State or this, I cannot find any containing this proceeding; and am well pursuaded that it hath never been practiced. I do not feel prepared, therefore, to lay down a rule that will have a tendency to shake all the orders of removal made since passing the act. The statute of 13 and 14 Charles II. empowers the justices to, remove the pauper,: unless he give sufficient .secwrity for the disehargeof the parish. The English precedents do not require the justices to insert-in the order of removal, that the pauper refused or neglected to give sufficient security, though they have no authorhy to- *299 remove him unless he does neglect or refuse. The statutes are not the same; but there is some resemblance, and the omission in the English practice, may have led to the omission in this country.
T am, therefore, of opinion, that both orders be affirmed.
By the Court. — Both orders affirmed.

 See these reports, page ISO.

 Bur. Set. Cases, 194.